**SMITH KRIVOSHEY, PC**
Joel D. Smith (New Jersey Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Telephone: 617-377-7404
joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (*pro hac vice* forthcoming)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7000
yeremey@skclassactions.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN DIVISION

| | | |
|---|---|---|
| FERNANDO CASTRO, KATIE VACCARO, and WENDY GUAN, on behalf of themselves and others similarly situated, | : : : : | **CASE NO.** _____ |
| Plaintiffs, | : : | |
| v. | : : | **CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |
| RED TOOLBOX USA INC. | : : | |
| Defendant. | : : : : : | |
| _____ / | | |

Plaintiffs, Fernand Castro, Katie Vaccaro, and Wendy Guan ("Plaintiffs"), individually and on behalf of all others similarly situated, brings this action against Defendant, Red Toolbox USA Inc. ("Defendant"). Plaintiffs' allegations as to their own actions are based on personal knowledge. The other allegations are based on their counsel's investigation, and information and belief.

## NATURE OF ACTION

1.    This case concerns highly toxic children's toys containing lead sold to unsuspecting parents.  Despite Defendant's 1) concession that it has effectively sold hundreds of thousands of units of toxic, worthless junk, 2) instituting a recall of the Products, and 3) instructing customers to stop using and destroy the Products, Defendant refuses to refund its customers a single cent. This is a case of protecting the bottom line at all costs.

2.    On September 12, 2024, Defendant Red Toolbox USA Inc. and the U.S. Consumer Product Safety Commission ("CPSC") announced the recall of roughly 459,200 Stanley Jr. Kids Wheelbarrow and 7-piece Garden Sets (the "Products").[1]  Consumers were warned to "stop using the long hoe and rake in the garden set immediately" because those parts "contain levels of lead that exceed the federal lead paint ban, posing a lead poisoning hazard to children."  As stated in the recall announcement, "[l]ead is toxic if ingested by young children and can cause adverse health issues."  The presence of lead in the Products is referred to herein as the "Defect."

3.    As stated on the CPSC website, "16 C.F.R. part 1303 declares paints or similar surface-coating materials that contain 0.009% or more lead by weight to be banned hazardous products under sections 8 and 9 of the Consumer Product Safety Act. Children's products and furniture articles that use paints or similar surface-coating materials that contain 0.009% or more lead by weight are also banned hazardous products."[2]  "All accessible component parts of the children's product must comply with the total lead limits requirement."[3]  As stated by Defendant, the Products contain more than this permissible level of lead.

_____

[1] https://www.cpsc.gov/Recalls/2024/Red-Toolbox-Recalls-Stanley-Branded-Jr-Kids-Garden-Sets-Due-to-Lead-Poisoning-Hazard-Violation-of-Federal-Ban-for-Lead-in-Paint-Sold-Exclusively-by-Costco-Wholesale
[2] https://www.cpsc.gov/Business--Manufacturing/Business-Education/Lead/Lead-in-Paint
[3] https://www.cpsc.gov/FAQ/Total-Lead-Content

4.       The harms of lead exposure for children is well known.  As stated by the World Health Organization, even "[a]t lower levels of exposure that may have no obvious symptoms, lead can lead to a spectrum of injury across multiple body systems. In particular, lead can permanently affect children's brain development, resulting in reduced intelligence quotient (IQ), behavioural changes including reduced attention span and increased antisocial behaviour, and reduced educational attainment. Lead exposure also causes anaemia, hypertension, renal impairment, immunotoxicity and toxicity to the reproductive organs."[4]

5.       The CPSC has likewise weighed in at 16 CFR § 1500.230(b):

> ***Hazard.*** Young children are most commonly exposed to lead in consumer products from the direct mouthing of objects, or from handling such objects and subsequent hand-to-mouth activity. The specific type and frequency of behavior that a child exposed to a product will exhibit depends on the age of the child and the characteristics and pattern of use of the product. The adverse health effects of lead poisoning in children are well-documented and may have long-lasting or permanent consequences. These effects include neurological damage, delayed mental and physical development, attention and learning deficiencies, and hearing problems. Because lead accumulates in the body, even exposures to small amounts of lead can contribute to the overall level of lead in the blood and to the subsequent risk of adverse health effects. Therefore, any unnecessary exposure of children to lead should be avoided. The scientific community generally recognizes a level of 10 micrograms of lead per deciliter of blood as a threshold level of concern with respect to lead poisoning. To avoid exceeding that level, young children should not chronically ingest more than 15 micrograms of lead per day from consumer products.

6.       In other words, this case concerns a well-known toxin that Defendant has admitted is present in the Products at levels exceeding federal thresholds.  There is no dispute that the Products cannot be used for their only intended use (as children's toys).  There is no dispute that

---

[4] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health#:~:text=Lead%20exposure%20can%20have%20serious,Burden%20of%20disease

children's toys containing unlawful levels of lead have no value.  Indeed, Defendant has instructed consumers to immediately discard and destroy the lead-containing parts.

7.    And yet, Defendant refuses to refund customers that purchased the Products. Instead, Defendant implemented a deficient recall that allows it to *say* they are doing the right thing, when in fact the primary objective is to protect their bottom line.

8.    Any requests for refunds are denied.  A consumer only has one option: destroy the hoe and rake portions of the Products, take a picture of the destroyed parts, send that photo to Defendant, and receive a replacement of the hoe and rake portions of the Products set.

9.    By design, the recall received very little publication, with the result that the response rate has been low. An offer to replace parts of the wheelbarrow set does little good when Defendant did the bare minimum possible to let people know about the offer. And, a refusal to offer refunds guarantees that customers who have lost faith in Defendant's products and no longer want their children playing with this gardening set are left with no recourse.  This approach benefits Defendant by minimizing the cost and burden of the recall.

10.   Plaintiffs, Fernand Castro, Katie Vaccaro, and Wendy Guan are filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendant's Products are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place."  *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## PARTIES

11.   Plaintiff Fernand Castro is a Modesto, California resident and may be referred to in the Complaint as the "California Plaintiff."  Plaintiff Castro purchased a Stanley Jr. Kids

Wheelbarrow and 7-piece Garden Set that is part of the September 12, 2024 CPSC Recall from a Costco near his home in California in between March and June of 2024.

12.    Plaintiff Katie Vaccaro is a Bohemia, New York resident and may be referred to in the Complaint as the "New York Plaintiff." Plaintiff Vaccaro purchased a Stanley Jr. Kids Wheelbarrow and 7-piece Garden Set that is part of the September 12, 2024 CPSC Recall from a Costco near her home in New York on February 26, 2024.

13.    Plaintiff Wendy Guan is an Portland, Oregon resident and may be referred to in the Complaint as the "Oregon Plaintiff." Plaintiff Guan purchased a Stanley Jr. Kids Wheelbarrow and 7-piece Garden Set that is part of the September 12, 2024 CPSC Recall from a Costco near her home in Oregon around June 2024.

14.    Before purchasing the Products, each of the Plaintiffs reviewed the Products' packaging at Costco, item details, descriptions, product specifications and features. For instance, the packaging of the Products prominently displayed pictures of the rake and long hoe components of the Products, which constituted material and important parts of the overall Product set, constituted a basis of the bargain, and represented information on which Plaintiffs relied. The Products were displayed and sold as "toys," intended to be used by children. For instance, the name of the Products is STANLEY Jr. KIDS WHEELBARROW & 7PC GARDEN SET," which Plaintiffs understood meant that the Products were meant to be used by young children as toys. These representation were material representations, which became the basis of the bargain, on which Plaintiffs relied. Neither the Products' packaging, labeling, or any other information surrounding the Products disclosed or suggested in any way that the Products contained the Defect. If the Products labeling or packaging had disclosed the Defect, then Plaintiffs would not have purchased the Products, or would not have purchased the Products on the same terms. Further, if

the Products did not contain the rake and long hoe components, Plaintiffs would not have purchased them, or would not have purchased the Products on the same terms.

15.     Defendant Red Toolbox USA Inc. is a Delaware corporation with its principal place of business and headquarters at 318 Helms Ct, Florham Park, NJ 07932.  All relevant product packaging and labeling, testing, interaction with government entities, and recall efforts were coordinated by Defendant from New Jersey.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of a state different from Defendant.

17.     This Court has general jurisdiction over Defendant because it is headquartered in New Jersey, and has a principle place of business in New Jersey. Further, the Court has general jurisdiction over Defendant because Defendant conducts substantial business within New Jersey such that Defendant has significant, continuous, and pervasive contacts with the State of New Jersey.

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

19.     **Product at issue:**  the Stanley Jr. Kids Wheelbarrow and 7-piece Garden Sets at issue in this case were sold exclusively at Costco stores nationwide and at www.costco.com from February 24, 2024 through June 2024 for about $35.  The Products include a wheelbarrow, apron, gloves, rake, hoe and hand tools.  The wheelbarrow has a white label on the bottom that states "Red Toolbox" and the manufacturing date of 12.2023. The recalled long hoe and rake have a

20.    **Defect at issue:**  As stated by Defendant: "The painted long hoe and rake of the recalled garden set contain levels of lead that exceed the federal lead paint ban, posing a lead poisoning hazard to children. Lead is toxic if ingested by young children and can cause adverse health issues."

21.    The Defect affects all of the Products at issue. Defendant and the CPSC have stated that "[c]onsumers should stop using the long hoe and rake in the garden set immediately."

22.    The cause of the Defect is the same for all of the products at issue.

23.    **Relevant time period:**  All of the omissions and misrepresentations at issue here were uniformly and consistently made at all times while the Products were sold between February 2024 and June 2024.  There have been no material changes to the product packaging or other consumer facing materials during the relevant period.

24.    **The omissions and misrepresentations:**  Defendant described the Products as kids toys that were safe to use, and that contained a long hoe and rake. However, Defendant failed to disclose that the long hoe and rake contained toxic levels of lead, and that the long hoe and rake portions of the Products could not be used.

25.    The omission pertains to an unreasonable safety hazard that reasonable consumers consider to be material.

26.    Plaintiffs and class members would not have bought the Products, or would not have bought them on the same terms, if the Defect had been disclosed. The materiality of the Defect also is demonstrated by the existence of the recall.

27.    Defendant did not disclose the Defect on the product packaging or labeling or any other customer-facing document or display. Costco's sales personnel and customer service representatives did not disclose the Defect either.

28.     At the time of purchase, Plaintiffs and class members did not know and did not have reason to know that the Products were defective. Defendant had exclusive knowledge of that fact.

29.     Defendant made partial representations to Plaintiffs and class members, while suppressing the safety defect. Specifically, by displaying the Products and describing its functions and parts, the Products' packaging and web pages implied that they were suitable and safe to use as children's toys, without disclosing that they had a critical safety-related defect related to the Products.

30.     **Defendant's Pre-sale Knowledge of the Defect**:  Defendant was aware of the defect at the time of sale.  For instance, federal regulations require that Defendant and/or its manufacturers conduct testing of the Products for lead content, using accredited third-party laboratories.[5]  This testing would have disclosed that the Products contain lead above the federal limits.  Defendant had a duty to disclose this information to its customers due to the toxic nature of the Products and the fact that it was in the sole position to know about the Products' lead content, but failed to do so.

31.     After launch, Defendant monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendant, replacement part data, field reports, and CPSC correspondence. Defendant knows that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Defendant made projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

---

[5] https://www.cpsc.gov/Business--Manufacturing/Testing-Certification/Third-Party-Testing/FAQs-Certification-and-Third-Party-Testing

32.    **Presuit notice:** On October 10, 2024, Plaintiffs provided pre-suit notice via certified mail in a letter that complied with all applicable notice requirements.

33.    **No Adequate Remedy At Law:**

34.    Plaintiffs and members of the putative classes are entitled to equitable relief because no adequate remedy at law exists.

35.    Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

36.    Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

37.    Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiffs seek non-restitutionary disgorgement of profits in connection with their unjust enrichment claims.

38.    Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

39.    In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

40.    **The Recall Does Not Render This Lawsuit Moot:**

41.    The recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

42.    Under the recall, Defendant is not providing any refunds to any class members. Instead, it is only providing a replacement of the long hoe and rake for those class members that submit a request.  These options are not viable for people like Plaintiffs who no longer trust the reliability of Defendant's products and do not wish to continue to do business with them.

43.    The CLRA provides that "in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000)." Cal. Civ. Code § 1780(a)(1). New York's General Business Law § 350 provides for statutory damages of $500 per unlawful sale, while GBL §349 provides for statutory damages of $50 per unlawful sale.  Oregon Unlawful Trade Practices Act, O.R.S. ORS 646.638(1) provides that for $200 in statutory damages per unlawful sale.  All of these are far greater than what is provided by the Recall, which is limited to a replacement of parts and no cash.

44.    The recall was only briefly publicized and in a very limited manner. Therefore, many eligible class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

## **FACTUAL ALLEGATIONS**

45.    ***Class Definition***: Plaintiffs brings this action on behalf all people in the following classes and subclasses (collectively referred to as "Class Members"):

       a.  <u>Nationwide Class</u>: all people in the United States who purchased one of the Products.

b. <u>Multi-State Implied Warranty Class</u>: all persons who purchased a subject Product for personal, family, or household use: (1) in Alaska, Arkansas, California, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, or Wyoming within the applicable statute of limitations; or (2) in Colorado or Massachusetts within the applicable statute of limitations.

c. <u>Multi-State Consumer Protection Class</u>: all persons who purchased a subject Product for personal, family, or household use: (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; or (4) in the states of Illinois and New York within the applicable statute of limitations.

d. <u>California Subclass</u>: all people who purchased a subject Product in California.

e. <u>New York Subclass</u>: all people who purchased a subject Product in New York.

f. <u>Oregon Subclass</u>: all people who purchased a subject Product in Oregon.

46. Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or

11

narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

47.    Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

48.    ***Numerosity.*** Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiffs at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, Costco, their agents, or other means.

49.    ***Commonality and Predominance***. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

a.    Whether Defendant knew or should have known of the Defect at issue in this case, and if so, when it discovered the Defect;

b.    Whether knowledge of the Defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

c.    Whether Defendant failed to disclose and concealed the existence of the Defect from potential customers;

d.    Whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here;

e.  Whether the Products contain lead in excess of federal limits.

50.    ***Typicality.*** Plaintiffs' claims are typical of the claims of the Classes in that Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiffs and all others similarly situated that the products at issue here can be dangerous.

51.    ***Adequacy***. Plaintiffs will fairly and adequately protect the interests of Class members. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Classes. Plaintiffs have no interests that are antagonistic to those of the Classes. Plaintiffs have no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

52.    ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

53. Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Members of the Classes and will likely retain the benefits of its wrongdoing.

### **FIRST CAUSE OF ACTION**
**Violations of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

54.     Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-53 and incorporate them by reference herein.

55.     California Plaintiff brings this cause of action individually and on behalf all other class members in the California Subclass.

56.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

57.     Defendant acted with knowledge and intent.

58.     California Plaintiff alleges a claim under all three prongs of the UCL.

59.     As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

60.     Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

61.     California Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws, the federal lead limits, and the common law as set forth herein.

62.     As a direct and proximate result of Defendant's unfair and deceptive practices, California Plaintiff and the other members of the California Subclass have suffered out-of-pocket losses.

63.     California Plaintiff and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful

conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair

conduct at issue here.

64.    California Plaintiff seeks all relief available under the UCL.

## SECOND CAUSE OF ACTION

### Violations of California's Consumer Legal Remedies Act ("CLRA")

### Cal. Civ. Code §§ 1750, *et seq.*

65.    Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-53 and

incorporate them by reference herein.

66.    California Plaintiff brings this cause of action individually and on behalf all other

class members in the California Subclass.

67.    Defendant is a "person" as defined by California Civil Code § 1761(c).

68.    California Plaintiff and the other Class Members are "consumers" within the

meaning of California Civil Code § 1761(d).

69.    For the reasons alleged above, Defendant violated California Civil Code §

1770(a)(5)(7) and (9).

70.    California Plaintiff provided pre-suit notice of the claims asserted under the CLRA,

in compliance with all of the CLRA's requirements.

71.    Defendant's unfair and deceptive acts or practices occurred repeatedly in

Defendant's trade or business.

72.    Defendant acted with knowledge and intent.

73.    Defendant engaged in conduct that had the tendency or capacity to deceive or

confuse reasonable consumers.

15

74.     With respect to restitution under the CLRA claim, California Plaintiff alleges in the alternative that Plaintiff and Class Members lack an adequate remedy at law for the reasons already alleged above.

75.     As a result of Defendant's misconduct, California Plaintiff and other Class Members have suffered monetary harm.

76.     Plaintiff seeks all relief available under this cause of action, other than damages. Plaintiff may amend the Complaint in the future to add a damages claim.

### THIRD CAUSE OF ACTION

**Violation of California's False Advertising Law**

**Cal. Bus. & Prof. Code § 17500, *et seq.***

77.     Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-53 and incorporate them by reference herein.

78.     California Plaintiff brings this cause of action individually and on behalf all other class members in the California Subclass.

79.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

80.     Defendant has represented to the public, including California Plaintiff and members of the California Subclass, through its deceptive packaging, that the Products are free of the Defect alleged herein, are fit for the purpose for which the Products would be used, and conform to the promises or affirmations of fact made on the package or label and advertising materials. Because

Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known, through the exercise of reasonable care, that the representations Defendant made are false and misleading, Defendant has violated the FAL.

81.     As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from California Plaintiff and members of the California Subclass. California Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to Plaintiff and members of the California Subclass to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, California Plaintiff and members of the California Subclass may be irreparably harmed and/or denied an effective and complete remedy.

82.     California Plaintiff and members of the California Subclass have no adequate remedy at law and are therefore entitled to restitution, disgorgement, and/or the imposition of a constructive trust to recover the amount of Defendant's ill-gotten gains, and/or other sums as may be just and equitable.

## FOURTH CAUSE OF ACTION

### Violation of Song-Beverly Consumer Warranty Act

### Cal. Civ. Code § 1790, *et seq.*

83.     Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-53 and incorporate them by reference herein.

84.     California Plaintiff brings this cause of action individually and on behalf all other class members in the California Subclass.

85.     The Products are "consumer goods" and California Plaintiff and Class Members are "buyers" within the meaning of Cal. Civ. Code § 1791.

86.     Defendant is a "manufacturer," "distributor," and/or "retail seller" under Cal. Civ. Code § 1791.

87.     The implied warranty of merchantability included with the sale of each Product means that Defendant warranted that Product (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Product would be used; and (c) conformed to the promises or affirmations of fact made on the label or packaging.

88.     The Products would not pass without objection in the trade because they contain the above-described Defect, which also makes them unfit for the ordinary purpose for which they would be used.

89.     The Products are not adequately labeled because their labeling fails to disclose the Defect and does not advise class members of the existence of the danger prior to experiencing failure firsthand.

90.     The Products were not sold on an "as is" or "with all faults" basis.

91.     Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the Product.

92.     Defendant's actions have deprived California Plaintiff and Class Members of the benefit of their bargains and have caused the Products to be worth less than what California Plaintiff and other Class Members paid.

93.     As a direct and proximate result of the breach of implied warranty, Class Members received goods whose condition substantially impairs their value. Class Members have been damaged by the diminished value of their Products.

94.     Under Cal. Civ. Code §§ 1791.1(d) and 1794, California Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, at their election,

the right to revoke acceptance of the Products or the overpayment or diminution in value of their Products. They are also entitled to all incidental and consequential damages resulting from the breach, as well as reasonable attorneys' fees and costs.

95.    California Plaintiff seeks all relief available under this cause of action.

## FIFTH CAUSE OF ACTION

### Violation of New York General Business Law § 349

96.    Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-53 and incorporate them by reference herein.

97.    New York Plaintiff brings this cause of action individually and on behalf all other class members in the New York Subclass.

98.    New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

99.    In their sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

100.    New York Plaintiff and members of the New York Subclass are consumers who purchased the Products from Defendant for their personal use.

101.    By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Products (a) would not contain a dangerous defect (b) are generally recognized as safe for use, and (3) could be used as children's toys. Defendant intentionally concealed and omitted material facts regarding the true nature of the Products.

102.    The foregoing deceptive acts and practices were directed at consumers.

103.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Products to induce consumers to purchase the same.

104.    By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

105.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages New York Plaintiff and members of the New York Subclass have sustained from having paid for and used Defendant's Products.

106.    As a result of Defendant's violations, New York Plaintiff and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Products on the same terms if they knew that the Products had a dangerous defect; (b) they paid price premium for the Products due to the undisclosed Defect; and (c) the Products do not have the characteristics, uses, benefits, or qualities as promised.

107.    On behalf of Plaintiff and other members of the New York Subclass, New York Plaintiff seeks to recover actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorney fees.

## SIXTH CAUSE OF ACTION

### Violation of New York General Business Law § 350

108.    Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-53 and incorporate them by reference herein.

109.    New York Plaintiff brings this cause of action individually and on behalf all other class members in the New York Subclass.

110.    New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

111.    Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

112.    Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of New York's General Business Law § 350.

113.    Defendant's false, misleading, and deceptive statements and representations of fact were and are directed toward consumers. Defendant also actively concealed and knowingly admitted material facts regarding the true nature of the Products.

114.    Defendant's false, misleading, and deceptive statements and representations of fact and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

115.    Defendant's false, misleading, and deceptive statements and representations of fact and omissions have resulted in consumer injury or harm to the public interest.

116.    As a result of Defendant's false, misleading, and deceptive statements and representations of fact, and omissions, New York Plaintiff and the members of the New York Subclass have suffered and continue to suffer economic injury.

117.    As a result of Defendant's violations, New York Plaintiff and members of the New York Subclass have suffered damages due to said violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products had a dangerous defect and are not safe for use; (b) they paid price premium for the Products due to the undisclosed Defect; and (c) the Products do not have the characteristics, uses, benefits, or qualities as promised .

118.     On behalf of Plaintiff and other members of the New York Subclass, New York Plaintiff seeks to recover actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorney fees.

### SEVENTH CAUSE OF ACTION

**Violation of Oregon Unlawful Trade Practices Act, O.R.S. 646.605 *et seq.***

119.     Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-53 and incorporate them by reference herein.

120.     Oregon Plaintiff brings this cause of action individually and on behalf all other class members in the Oregon Subclass.

121.     The Oregon Unlawful Trade Practices Act ("OUTPA") prohibits persons from engaging in trade practices declared unlawful under ORS 646.608.

122.     Persons that suffer an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act, or practice declared unlawful under ORS 646.608 may bring an action to recover actual damages or statutory damages of $200, whichever is greater. ORS 646.638(1).

123.     Oregon Plaintiff and members of the Oregon Subclass are "persons" under ORS 646.605(4).

124.     Defendant is a "person" under ORS 646.605(4).

125.     Defendant engages in "trade" or "commerce," including when it sells the Products, within the meaning of ORS 646.605(8) because it advertises, offers, or distributes goods, including in a manner that directly or indirectly affects the people of Oregon.

126.     The OUTPA makes it illegal to, among other things:

a.   Represent that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that goods do not have.

b.   Represent goods are of a particular standard, quality, or grade, if the goods are of another.

c.   Concurrent with tender or delivery of any goods fail to disclose any known material defect or material nonconformity.

d.   Engage in any other unfair or deceptive conduct in trade or commerce.

127.   New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

128.   By failing to disclose the presence of the Defect, and representing that the Products were able to be used for their intended purpose, Defendant violated each of the foregoing.

129.   Defendant's violations of the OUTPA were willful, reckless, or knowing.

130.   Oregon Plaintiff and members of the Oregon Subclass suffered ascertainable losses as a result of Defendant's unfair and deceptive practices, in that they purchased Products that they would not have purchased had they known the truth, or paid more than they otherwise would have. They are entitled to recover $200 per class member plus prejudgment interest, attorneys fees and costs, and punitive damages.

131.   Oregon Plaintiff and the Oregon Subclass Members are also entitled to punitive damages, as Defendant's actions were accompanied by fraud, ill will, recklessness, wantonness, oppressiveness, and willful disregard for their rights.

## EIGHTH CAUSE OF ACTION

### Breach of Implied Warranty

132.    Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-53 and incorporate them by reference herein.

133.    Plaintiffs bring this cause of action individually and on behalf all other Class Members.

134.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Products at issue, impliedly warranted that they would pass without objection in trade under the contract description; were fit for the ordinary purpose for which the Products would be used; and conformed to the promises or affirmations of fact made on the labels and packaging.

135.    Defendant breached its implied warranty because the Products could not pass without objection in the trade under the contract description, they were not adequately labeled because there was no disclosure of the Defect at issue; and they are unfit for their ordinary purpose. As a result, Plaintiffs and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

136.    Plaintiffs and Class Members purchased the Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

137.    The Products were defective when they left the exclusive control of Defendant.

138.    Plaintiffs and Class Members did not receive the goods as warranted.

139.    The Products were not sold on an "as is" or "with all faults" basis.

140.    Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the product.

141.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Class Members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew that the Products were dangerous and

unlawful to be sold; and (b) the Products do not have the characteristics, uses, or benefits as promised by Defendant.

142.    Plaintiffs seek all relief available under this cause of action.

## NINTH CAUSE OF ACTION

### Unjust Enrichment

143.    Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-53 and incorporate them by reference herein.

144.    Plaintiffs bring this cause of action individually and on behalf all other Class Members.

145.    To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

146.    The unjust enrichment claims are premised on Defendant's pre-sale activities and are unrelated to their post-sale obligations to provide repairs.

147.    Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money Plaintiffs and Class Members paid to Defendant.

148.    Defendant knew of the benefit conferred on it by Plaintiffs and the Class Members.

149.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Products were dangerous. This caused injuries to Plaintiffs and class members because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

150.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

151.    Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

152.    Plaintiffs and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

153.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered in an amount to be proven at trial.

154.    Putative Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

155.    Putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## TENTH CAUSE OF ACTION

### Fraud by Omission / Intentional Misrepresentation

156.    Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-53 and incorporate them by reference herein.

157.    Plaintiffs bring this cause of action individually and on behalf all other Class Members.

158.    This claim is based on fraudulent omissions concerning the safety of consumers who use the Products. As discussed above, Defendant failed to disclose that the Products had a dangerous defect.

26

159.    The false and misleading omissions were made with knowledge of their falsehood. Defendant is a nationwide manufacturer and distributor who was required to conduct third-party testing and conduct due diligence of the lead content of the Products, and must have known about the Defect prior to sale. Nonetheless, Defendant continued to sell its toxic Products to unsuspecting consumers.

160.    The false and misleading omissions were made by Defendant, upon which Plaintiffs and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and Class Members to purchase the Products.

161.    The fraudulent actions of Defendant caused damage to Plaintiffs and Class Members, who are entitled to damages and punitive damages.

162.    Plaintiffs seek all relief available under this cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed class, prays for the following relief:

A.    Certification of the proposed classes;

B.    Appointment of Plaintiffs as representative of the classes;

C.    Appointment of undersigned counsel as counsel for the classes;

D.    A declaration that Defendant's actions complained of herein violated the statutes referenced herein;

E.    For an order finding in favor of Plaintiffs and class members on all counts asserted herein;

F.      For an award of injunctive or other equitable relief as is necessary to protect the interests of Plaintiffs and the class members, including, inter alia, an order prohibiting Defendant from engaging in the unlawful acts described above;

G.      For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

H.      For prejudgment interest on all amounts awarded;

I.      For an order of restitution and all other forms of equitable monetary relief;

J.      For an order awarding Plaintiffs and class members their reasonable attorney fees, expenses, and costs of suit.

K.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a jury trial on all issues so triable.

Dated: November 6, 2024                    Respectfully  submitted,

SMITH KRIVOSHEY, PC

*s/ Joel D. Smith*
Joel D. Smith
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Telephone: 617-377-7404
E-Mail:  joel@skclassactions.com

Yeremey O. Krivoshey (SBN 295032)
(*pro hac vice* pending)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: 888-410-0415
E-Mail: yeremey@skclassactions.com

*Attorneys for Plaintiff*
*and the Proposed Class*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby further certify that the matter in controversy is the subject of another action

pending in this court, entitled *Mcarther et al. v. Red Toolbox USA Inc.*, Case No. 2:24-cv-

09723-MCA-MAH.

Dated: November 6, 2024                     Respectfully submitted,

                                            SMITH KRIVOSHEY, PC

                                            *s/ Joel D. Smith*
                                            Joel D. Smith
                                            867 Boylston Street, 5th Floor, Ste. 1520
                                            Boston, MA 02116
                                            Telephone: 617-377-7404
                                            E-Mail: joel@skclassactions.com

                                            *Attorneys for Plaintiff*

## CLRA Venue Declaration, Civil Code § 1780(c)

I, Joel D. Smith, declare as follows:

1.      I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

2.      I am the attorney for Plaintiffs in the above-captioned action.

3.      I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

4.      The Class Action Complaint has been filed in the proper place for trial of this action.

5.      It is my understanding that Defendant regularly transacts business in this County, and the acts and omissions giving rise to this action occurred in large part in this County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.  Executed on November 6, 2024 in Danielson, CT.

By:   /s/ Joel D. Smith
              Joel D. Smith