UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

June 12, 2025

VIA ECF
All Counsel of Record

**LETTER ORDER**

Re: **Castro et al v. Red Toolbox USA Inc.**
    **Civil Action No. 24-10310**

Dear Litigants:

Before the Court is Defendant Red Toolbox USA Inc.'s ("Red Toolbox" or "Defendant") motion to dismiss named Plaintiffs Fernando Castro's, Katie Vaccaro's, and Wendy Guan's ("Plaintiffs") class action complaint. See ECF No. 12 (the "Motion"). Plaintiffs oppose the Motion. See ECF No. 13 ("Opposition"). For the following reasons, Defendant's Motion is **GRANTED**.

I.   BACKGROUND

The premise of this case is simple. Plaintiffs allege they each purchased a children's gardening set, and two pieces of the set—the hoe and rake—were later voluntarily recalled for lead contamination above the federal limit. See, e.g., ECF No. 1 ("Compl.") ¶¶ 1–3, 11–13. Because the lead-contaminated items are "highly toxic" to children, Plaintiffs allege they "have no value," depriving Plaintiffs of the benefit of their bargain. See, e.g., id. ¶¶ 1, 6, 14.

Defendant Red Toolbox, the gardening set's manufacturer and distributor, offered replacement parts as part of the voluntary recall. See Mot., Ex. 1 ("Recall Notice"). Plaintiffs instead filed suit against Red Toolbox.[1] See generally Compl.

While Defendant raises myriad arguments in its Motion, this Order will address only one of them: whether Plaintiffs have plausibly alleged that their gardening sets were contaminated with lead sufficient to establish Article III standing. Determining that Plaintiffs have failed to cross the

---

[1] Plaintiffs bring the following claims on behalf of themselves and others similarly situated: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.; (2) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.; (3) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.; (4) violation of the Song-Beverly Consumer Warranty Act, Cal Civ. Code §§ 1790 et seq.; (5) violation of New York General Business Law § 349; (6) violation of New York General Business Law § 350; (7) violation of Oregon Unlawful Trade Practices Act, O.R.S. 646.605 et seq.; (8) breach of implied warranty; (9) unjust enrichment; and (10) fraud by omission/intentional misrepresentation. See generally Compl.

1

plausibility threshold, this Court lacks jurisdiction and must dismiss Plaintiffs' Complaint.

## II. STANDARD

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), as standing is a jurisdictional matter. See Huertas v. Bayer, 120 F.4th 1169, 1174 (3d Cir. 2024). When faced with a facial attack on standing, courts review complaints pursuant to the Rule 12(b)(6) standard, accepting as true "all material allegations set forth in the complaint," and "constru[ing] those facts in favor of the nonmoving party." Id. (quoting In re Schering Plough Corp., Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)). To survive a motion to dismiss, a complaint must contain adequate factual matter to state a claim for relief that is facially plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "While the plausibility standard does not impose a 'probability requirement,' it does demand 'more than a sheer possibility that a defendant has acted unlawfully.'" Huertas, 120 F.4th at 1174 (quoting In re Schering, 678 F.3d at 243). It is always a plaintiff's burden to establish each element of standing "with the manner and degree of evidence required at the successive stages of the litigation." FOCUS v. Allegheny Cnty. Ct. of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996) (citation omitted).

## III. DISCUSSION

To establish Article III standing, plaintiffs must demonstrate they have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Huertas, 120 F.4th at 1174. To properly allege the first prong of that test, plaintiffs must show they suffered a concrete, particularized, and actual or imminent invasion of a legally protected interest. Id. A "particularized" injury is an injury that "affects [a plaintiff] in a 'personal and individual way.'" Yaw v. Del. River Basin Comm'n, 49 F.4th 302, 314 (3d Cir. 2022) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (3d Cir. 2016)). In a class action proceeding, "the class's standing turns on the named plaintiffs' standing." Lewis v. Gov't Emps. Ins. Co., 98 F.4th 452, 459 (3d Cir. 2024). Therefore, if plaintiffs are unable to allege that they suffered particularized injuries as representatives of the class, the complaint must be dismissed for lack of subject matter jurisdiction.

When pleading injury under the benefit-of-the-bargain theory due to a contaminated product, plaintiffs must not only plausibly allege economic injury, but that the items they purchased were contaminated. Huertas, 120 F.4th at 1175–79. Here, putting aside any argument that Plaintiffs' injuries were remedied by Defendant's replacement offer,[2] Plaintiffs have adequately pleaded economic injury: that the gardening set, which contained lead beyond acceptable levels, was worth less than one containing an acceptable level of contaminant. See Compl. ¶¶ 1–3, 6, 14. Cf. Huertas, 120 F.4th at 1178 ("[G]iven that contaminated products are unfit for their intended use, they are inherently worth less than the uncontaminated products Plaintiffs thought they were purchasing."). Plaintiffs, however, have not plausibly alleged that their gardening sets were among the contaminated.

---

[2] Because the Court has concluded that Plaintiffs lack standing for failure to plead their gardening sets were contaminated, the Court does not address Defendant's second standing argument: that Plaintiffs' injuries were remedied by Defendant's offer to replace the contaminated items. See Mot. at 11–20.

At the motion to dismiss stage, "Plaintiffs need not assert with specificity the extent of the contamination across all products, so long as they provide sufficient details to plausibly allege their products were contaminated." Huertas, 120 F.4th at 1178 (emphasis added); see also In re Recalled Abbot Infant Formula Prod. Liab. Litig., 97 F.4th 525, 529–30 (7th Cir. 2024) (injury-in-fact is adequately particularized when facts allege that the "contamination of . . . products [is] sufficiently widespread to plausibly affect any given [product,] including the ones [plaintiffs] purchased"). "In evaluating such an allegation, we must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom and view them in the light most favorable to plaintiff. The key, though, is that [the Court] only draw[s] reasonable inferences in a plaintiff's favor." Id. (quotation marks omitted). "The mere fact that a product was recalled would not nudge Plaintiffs' claims across the line from conceivable to plausible." Id. (cleaned up).

Plaintiffs' relevant allegations include the following:

1. The Recall Notice warned consumers "to 'stop using the long hoe and rake in the garden set immediately' because those parts 'contain levels of lead that exceed the federal lead paint ban, posing a lead poisoning hazard to children.'" Compl. ¶ 2 (quoting Recall Notice); see also id. ¶ 20.

2. "As stated by Defendant, the Products contain more than [a] permissible level of lead." Id. ¶ 3.

3. "Plaintiff Castro purchased a Stanley Jr. Kids Wheelbarrow and 7-piece Garden Set that is part of the September 12, 2024 CPSC Recall from a Costco near his home in California between March and June of 2024." Id. ¶ 11.

4. "Plaintiff Vaccaro purchased a Stanley Jr. Kids Wheelbarrow and 7-piece Garden Set that is part of the September 12, 2024 CPSC Recall from a Costco near her home in New York on February 26, 2024." Id. ¶ 12.

5. "Plaintiff Guan purchased a Stanley Jr. Kids Wheelbarrow and 7-piece Garden Set that is part of the September 12, 2024 CPSC Recall from a Costco near her home in Oregon around June 2024." Id. ¶ 13.

6. "The [lead contamination] affects all of the Products at issue." Id. ¶ 21.

7. "The cause of the [lead contamination] is the same for all of the products at issue." Id. ¶ 22.

In sum, Plaintiffs rely on the fact that the gardening sets were voluntarily recalled and two conclusory allegations concerning the extent of contamination to establish standing. While Plaintiffs' allegations may demonstrate, at most, that Plaintiffs' gardening sets were recalled,[3] they

---

[3] While other grounds support the Court's decision to dismiss for lack of standing, see infra, the Court is skeptical as to whether Plaintiffs have adequately alleged their gardening sets were subject to the

otherwise fail to raise the plausible inference that Plaintiffs' gardening sets were among the contaminated, or that the contamination was so widespread that impermissible levels of lead could have been present in any given product.

Take the Recall Notice, which stated that "[t]he painted long hoe and rake of the recalled garden[ing] set contain levels of lead that exceed the federal lead paint ban" and directed consumers to "stop using" the items. Mot., Ex. 1 at 2. Plaintiff argues that because the notice contained no "qualifications or caveats that [Defendant's] products may not, in fact, have elevated lead levels," Opp'n at 9, the Court can infer that all the gardening sets were contaminated. Plaintiff also urges the Court to infer that the gardening sets were tested "in connection with [the] recall," further bolstering Plaintiff's allegations that contamination was widespread. Id. at 10; see also Compl. ¶ 30.

But the Court cannot make such inferential leaps from the cursory Recall Notice that Defendant issued in coordination with the Consumer Protection Safety Commission. See Mot. at 25. As this Court recently held concerning an identical notice, the language—devoid of any detail or context—"does not amount to a concession from Defendant that every single product was contaminated." McArther et al. v. Red Toolbox USA Inc., No. 2:24-cv-09723-MCA-MHA (D.N.J.), at ECF No. 21. And while Plaintiffs ask the Court to infer that testing results drove the recall, it is the precise absence of that sort of information from the Recall Notice that prevent this Court from accepting Plaintiff's arguments concerning the notice's language.[4]

---

recall. The Recall Notice specifies that gardening sets with the model number 1662178 and a manufacturing date of 12.2023—which were sold exclusively at Costco during a specific time range—were the sets subject to the voluntary recall. See Mot., Ex. 1 at 2–3. Plaintiffs squarely allege that they purchased the sets at Costco during the relevant time range, and assert, in a conclusory fashion, that their sets were part of the recall. See Compl. ¶¶ 11–13. But Plaintiffs omit from their allegations the specific model number and manufacture date of their gardening sets. As the Recall Notice does not clarify whether the only Stanley Jr. gardening sets sold at Costco during that period had that model number and manufacture date, the Court can not clearly discern whether Plaintiffs purchased a gardening set that was recalled or one that, for example, was manufactured before or after December 2023. Cf. Huertas, 120 F.4th at 1181 (dismissing Plaintiffs who failed to allege a lot number subject to the recall for lack of standing because "[w]ithout any information to tie these Plaintiffs' products to the recall other than the timeframe during which they made their purchases, these Plaintiffs' allegations 'stop short of the line between possibility and plausibility.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 546 (2007))). The Court reserves any ruling on this point but encourages Plaintiffs to address this discrepancy in an amended complaint.

[4] In fact, Plaintiffs' reliance on Defendant's purported testing raises the opposite inference. Defendant explains that, "before importing the Toy Sets into the United States, Costco needed a CPSC-approved third-party laboratory to test enough of the Toy Sets for the presence of lead. Had the tests shown the presence of lead exceeding 0.009% (90 ppm), the Toy Sets could not have been imported, let alone sold in the United States." Mot. at 5 (emphasis added). As such, "[t]he only plausible inference is that the product samples tested by the lab did not have paint with lead levels exceeding the permissible limit," meaning that "the presence of lead in the Recalled Products was not uniform." Id. at 25. To reason otherwise would mean that "Red Toolbox, Costco, and the CPSC-accredited laboratory all knew that the Toy Sets included pieces with excessive lead in the paint, Costco hid that fact from the United States, lied about the test results and falsified certifications putting themselves at risk for millions of dollars in fines and penalties and possible criminal charges—just so that Costco and Red Toolbox could sell this one type

In a recent Third Circuit decision, Huertas v. Bayer, the Court held that the "mere fact that a product was recalled would not nudge [p]laintiffs' claims across the line from conceivable to plausible." 120 F.4th at 1178 (cleaned up). Language in Bayer's recall notice directing plaintiffs to "stop using" their products because benzene was present in "some samples" of the products tested made that holding "particularly true." Id. at 1178 & n.15 (emphasis added). But it is not apparent that the Court's ruling was contingent on that language, or, said differently, that a notice with language somewhat less favorable to a defendant would render a voluntary recall notice dispositive evidence of widespread contamination.

Of course, if the Recall Notice clearly indicated that lead contamination was, in fact, pervasive, or Defendant otherwise conceded that point, that is evidence the Court could not ignore. But merely citing the Recall Notice, without alleging any other facts to support widespread contamination, is insufficient to establish standing.

Plaintiffs' allegations that "[t]he [lead contamination] affects all of the [gardening sets] at issue," and that "[t]he cause of the [lead contamination] is the same for all of the [sets] at issue" are purely conclusory, and do not move the plausibility needle. Id. ¶¶ 21, 22. Cf. Hirsch v. L'Oreal USA, Inc., No. 22-06569, 2025 WL 1540857, at *3 n.6 (N.D. Ill. May 29, 2025) (plaintiff's passing allegation that her shampoo product was contaminated with benzene was too conclusory to support an inference that plaintiff actually purchased a contaminated product). Indeed, as Plaintiffs point out, the Court is required to "draw inferences in [their] favor" at the motion to dismiss stage, Opp'n at 9, but only when those inferences are reasonable and supported by "factual content," Iqbal, 556 U.S. at 678 (emphasis added); see also Huertas, 120 F.4th at 1178 (plaintiffs must provide "sufficient details to plausibly allege that their products were contaminated" (emphasis added)). Here, Plaintiffs have not pleaded any other factual content from which the Court could infer that contamination was widespread.

Accordingly, Plaintiff's Complaint is **DISMISSED** without prejudice.

**SO ORDERED.**

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

of Toy Set." ECF No. 14 at 10. Plaintiffs fail to offer any persuasive response to Defendant's characterization of the testing requirements.